Last name, counsel? Scipiora. Scipiora. Okay. Mr. Scipiora, you may proceed. Thank you, Your Honor. Good morning. As you know, this case involves a matter in which the District Court granted summary judgment. Can I just quickly, before you get into the merits of your argument? Yes, sir. I was concerned that there's not a final judgment here. I'm looking at A-001 and A-002, which is the judgment and the order of judging and decreeing the judgment. There was a counterclaim of invalidity here on three grounds, A-002, A-003, and A-0012. And the counterclaim of invalidity, there was a motion for summary judgment on the counterclaim in two respects, one for non-infringement and one for invalidity. Summary judgment of non-infringement was granted. Your side made a motion, it's at number 156 in the docket, for summary judgment in your favor on a whole slew of issues. And you asked for summary judgment in your favor only on the 112 claim. Your summary judgment did not cover A-002 and A-003. And so I'm puzzled. What is the basis that you feel for saying that the counterclaims on A-002 and A-003 have been dismissed? I wasn't aware of an issue. It's never been raised. It's a jurisdictional issue. Those counterclaims are still pending. I'm not sure of the disposition. The judge obviously tried to clear out the docket. Well, if you look at A-001, I know the judge probably thought he was doing it, but in A-001 and A-002, you see that as the judge in the whereas clause, which is on page 101, that whereas, there's a bunch of stuff pending in front of us. And it says, whereas, the recommendation is that all other remaining motions and claims be denied or dismissed as moot for lack of subpoena having come before me. And then you look over and see what the actual order is. The whereas clause is describing what was in front of the judge. And the whereas clause says, whereas, Wieland's motion for summary partial judgment dismissing LG's affirmative defenses is denied as moot. So it's not that it's dismissed, and first of all, it's referring to the affirmative defenses, not to the counterclaims. Is it your belief that all of them, all the counterclaims have been dismissed from this case and it's in position for review? Or do you believe that there are still pending counterclaims below? My understanding was the court had disposed of all pending matters. If this case went back, if we flipped the claim interpretation and sent it back, there's going to be some more activity, correct? There'll be a trial on all issues, really. Now, at the trial, will LG have to refile a complaint raising a counterclaim of invalidity on 102 and 103? If they were dismissed, it would have to refile. And the question is, is it gone? Or is it just lying dormant in there somewhere, perhaps due to an administrative foul law? Honestly, I don't know the answer to that. I don't know the disposition with respect to that, because I know the intent of the court was to clear this off the docket based on this construction. And as you can see, various orders were issued relating to these various matters. But as to the specific issue of the counterclaims, it was never raised, and it's never been an issue among the parties. Well, I would have thought it would have come to somebody's, you know, I'm not even a patent lawyer, but I mean, look at this. Order to judge the affirmative defenses is denied as moot. And the affirmative defenses was, you know, half of the answer, the other half of the answer, were the counterclaims. Yeah, I don't know that this court ever issued an order on the counterclaims. And I'll look to my colleagues. I'm not aware of any order on the counterclaims specifically. But it's your belief that they were dismissed? Yeah. I believe that there was dismissal of the entire action. He closed it up on appeal. Would it be your position that that first sentence, that includes the number three, which says all of the remaining motions and claims be denied or dismissed as moot or for lack of subject matter jurisdiction, should be viewed by this court as sufficient to amount to their dismissal? Yes. Even though that's in the whereas clause as opposed to the order. I think that's as close as the court got, perhaps. The district court. Is that okay? Yeah. Why don't you go ahead and tell us your argument on the merits. About the merits of the case. Yes. Thank you, Your Honor. All right. So, as I was saying, summary judgment is granted based on two words, informational scheme. And what's remarkable here, as a matter of law, there are three things that are remarkable, really extraordinary about this ruling as a matter of law. One, informational scheme is defined in the specification by the inventor. He was his own lexicographer. And if the district court did not use that definition, came up with his own definition. If the district court believes he later, through prosecution, disclaimed something such that he's not entitled to that lexicography, then it would be proper. And that seems to be what the court said, whether he's right or not. That seems to be what he said. True. And what I would get at is they're extraordinary in the sense that, if you look at the fact the court didn't come up, did not find another definition anywhere in the specification or file wrapper. There was no other definition to be chosen. The court came up with its own definition, which raises another red flag. First, you ignore the lexicographer's choice. Second, red flag goes up. Second, red flag goes up. The court comes up with its own construction. Often those cases, disclaimer, they'll find a specific other clause, something else specific. Not so here. And third, red flag, which is particularly important. Well, I thought he used exactly that definition. He just further limited it to said, no a priori, no advanced knowledge. No, he modified it. He added information, terms about rating agencies. He altered it to suit what he thought was the intent of the party, of the inventor. He actually changed it from what the inventor said. He added some language about a rating agency, and then he added this thing about no advanced knowledge. That's not what you dispute, is it? You don't dispute the language about the rating agency, as I understand it. You dispute the a priori knowledge. Am I wrong? Well, I would dispute the entire definition. But the point is, when a court does something like that, where did it find it? Was there something specifically stated? In the cases that we know from this court, when there's disclaimer, typically you'll find some specific language that said, here's what you should use instead. What's extraordinary here is the court rejected the specific language, came up with its own that wasn't anywhere else, and, by the way, the language the court came up with does not cover some of the embodiments set forth in this specification. Which, if you look at, for the first time we're seeing, in the red brief, page 28, LG acknowledges that. So, where there's smoke, there's fire. There's at least three irregularities here. And, ultimately, what you're looking for is to determine whether or not, what is the proper construction of that term, informational scheme. The proper construction is the construction provided by the patentee. It's its own lexicographer. It's set forth in column 5, lines 39 through 43. It is clearly stated, and it works. It actually makes sense. There's no articulation of a problem with it. And so, the answer to the question is, what's the proper construction? It's the one that the patentee provided. It struck me that what the district court was trying to do was to fit in a claim construction here that he thought comported with what the invention was all about. Exactly. And that's what... So, he's trying to say, look, I'm just trying to deal with what this invention is covering. He's looking at a situation where he's thinking to himself, hmm, we landed simply arguing that LG is practicing the prior art. That's what LG's doing. And so, well, you can't, you know, you can't infringe by practicing the prior art. And so, he comes up with a claim construction that makes infringement impossible. Right. Well, so the court did it, and you're exacting on what the court did. Is that sort of what you, how you read what the district court was doing? I'd say, yes. I'd say that's part of it. Three things the district court relied on. So, we know the standard here is clear and unmistakable. That's what we're looking for. So, we clearly have it framed. There was a definition given. There's no doubt about that. It was given. It's in the spec. Column 5, 39 through 43. The court comes up with another construction. In order to do that, there must be something, a contrary definition, somewhere in the file wrapper, somewhere else, which there is not. No dispute about that. And so, what we're talking about here, as Judge Moore has said, was there a clear and unmistakable disavowal. The court says there was. What does he rely upon? First, Judge Clevenger, right, he relies on intent. Primarily in the magistrate judge report and recommendation. That's where he looks. And that's the big problem in terms of the first step. The intent of the invention was, in part, to be able to do this remote alteration or changing of the, of the informational scheme. But, it's much more than that. And that's why the language of the claim is broad. The language of the claim, if you go back to Claim 7, is receive and store. It doesn't say, and remotely configure. It doesn't do that. If you look at the specification, what's, Well, counsel, would it be fair if I referred to steps A through D as the receiving and storing portion? That would be fair, Your Honor. Yes, it would. And then, if I were to refer to, would it be E through I or F through I as the blocking step? Would that be a fair characterization? Yes. I don't, I'm not, I'm not trying to say  so I'm just, Yeah, I think that's, Okay. That's reasonably fair. So, well, as I understand your argument, it is, what occurs in A through E or so, the receiving and storing, doesn't have to be what's used for blocking. Is that right? Am I understanding your argument right? Well, when you say it doesn't have to be used, the informational scheme that's involved in the blocking is the same. So, for example, if the moving rate, MPAA, Moving Association of America rating system is in place, that same informational scheme will be used for purposes of selecting and blocking. The distinction the district court misses here is that it doesn't require a complete download of the entire informational scheme. The way it's received is received and stored and if you look at the specification, pages 10 through 12 of our brief, multiple examples of three possibilities. One is a complete change of the informational scheme. So the configuration information comes down and it's a completely new informational scheme. But counsel, as I understand the way this works and maybe I don't understand it but as I think I understand it, what's being used, what's actually being used in the accused devices to do the blocking is not what's being received it's something that's already pre-programmed. It's the same informational scheme. When you say it's being used, it's the same information it just isn't in the exact same configuration. Suppose I have two law clerks, they're identical twins, they're not the same person. One of them does a case for me, they may have the same DNA and the same information but they're not the same person. If they are retrieving information from a pre-programmed separate location and that's what they're using for blocking, despite the fact that there might be some redundancy where that same information is being sent, that's not the information, the actual information that is being used. Effective, no, it's a bad analogy, it is the same information. The configuration information, first of all, configuration information is what's stored and it's not the complete informational scheme. It can be part of an information, it can be part, it can be redundant, it can be entirely new. That's the A through D. When it talks about, look at what's downloaded, it's configuration information not the informational scheme. That's the important distinction here. Configuration information can describe part of an informational scheme, it can describe an entire informational scheme, or it can describe something that's already there. That's what, if you look at, particularly in the patent with respect to the program rating, configuration control packs, PRCC, if you look at that particular example where it talks about actually receiving a particular piece of information, think about the configuration information as describing an informational scheme. It may describe an informational scheme that's already present in the unit, it may describe something that's partially different, either amending it or supplementing it, or it may describe something that's completely new. It's received and stored. At that point, the unit, as described in the specification, can do three things. If it's new, it can change on the fly and has a whole new informational scheme. If it's the same, it can just discard it, which is the example given in the patent with respect to the PRCC, as it says here. For example, and this is an example that's given in the specification. There's three things it could do? It can do three different... So if it's new, you use it, if it's the same, you discard it, and... If it's partial, you'll use the part that's different or supplement it. It can be different, changing, or it can be additional. There are multiple examples we give in the briefs about this particular issue, but just a specific example, which is an embodiment of the invention, they've acknowledged it, is column 24. It starts on 23, it carries to 25. It talks about these PRCC packets, which are designed to impact the configuration information and tell us about the informational scheme. And it says, if it appears 20, has already received a complete PRCC packet sequence, corresponding to that revision code, then it is not necessary for the FRS to parse the packets being issued because it's already contained. So instead it discards it, right? Isn't that what the LG device does? It discards that information. It discards, doesn't use, whatever. Exactly. But if it discards that information, then how can you say that is the information being used in the blocking step? The blocking step uses... There's a difference here. The information that's received is configuration information describing... So think of it as a rating system. The rating system is, as you've heard in other movies, the MPAA, PG-17. Because it describes something that was rejected, the thing that it described and rejected was used. It's still used, right. That's your argument. It's still MPAA. So think about... Used in a metaphorical sense. Well, yes, exactly. Actually not used,  was what was embedded in their receiver. Because we already had the MPAA, for example. So if you go to the movie to see PG-17, that's the rating system. I'm just trying to be... Your answer to the presiding judge, I think, would be, in all honesty, would be to say, well, in one respect, that what was received is not used because it was discarded. But in another, it is used because it's the same information. Yeah. The point is, there's no requirement that A through D, that the information actually be used specifically. It doesn't say it's being used. That's the point. That's one of the distinctions that the court seemed to miss. It says you have to be using that. Well, no, but it's not in A through E that it says it, but isn't it in E through I where it's referring to said category information, said information. Right. Well, said means it has to be the one it talked about earlier, which is the one that was received in store. Yeah, the thing being described, for example, go to the movie theater, MPA is the one we're very familiar with, PG-17, right? You go to a movie, MPA-17, right? That's the informational scheme, okay? So that's embedded in the unit. It's already there. We already know what, and we know what the user selections are. Configuration comes down. It describes, let's say it describes MPAA, okay? The unit goes and looks and says, we've already got MPAA with us. We don't need any of that configuration information. We can make the determination because you've told us it's MPAA, we've already got it. In that case, it would discard the configuration information would not be used, just look at it, receive it and store it, and then use the MPAA rating that's already there. But it doesn't actually receive it and store it. It receives it and discards it. No, no, it absolutely stores it. It goes into memory and then, as described in the patent, and then it may not be used just as this example gave. But it's not just that it isn't used. It's discarded and they use something else they already have in memory. Well, there's no requirement that what's received and stored be specifically used to do this. But it says said information scheme. It has to be the one received and stored, not a different one that you already have. And that information scheme is being used. It's being described.  is not the information scheme. Very clear. A through D is not the information scheme. This is where I think your problem with the District Court on claim construction may be well here. Maybe he didn't, that shouldn't have defined information scheme the way he did. But isn't it sort of unnecessary because it's the rest of the claim that actually lays out quite clearly that a priori pre-programmed information is what can't be used. So, the whole claim requires that. What's received and stored has to be what's used for blocking. And that's really where all of this what he referred to as disclaimer but really is repeated distinctions of the prior art based on a priori knowledge of pre-programmed machines comes into play. Maybe it's not specific disclaimer and information scheme as a term but it's a description of what your claim is covering. Well, that's the point as Judge Coventer said. It only describes one possibility. It's limiting. The prior art was limited to it must use pre-programmed information. And the flexibility Professor Cullings that's what the whole language is. It's must. You must use Do we actually know in LG's device what happens to the information describing this information scheme when it receives when it gets into the receiver? When you say it comes in it obviously comes in because it's part of the transmitted signal. And does it where does it go? Do we know? The court found an infringement but for this particular interpretation. We know that it comes in it's received and it's stored.  because it's the same it's going to be RRT1 it's going to be the same as what's already embedded it'll be discarded. It just won't be used. Like discard? Written over not used but it will look at it it will come in and evaluate what it is. Because there's no way there's no way for the receiver to send it someplace it gets swallowed inside. No, no, no and that's the point this is one so again the three examples we give and the specification is totally consistent with what was being distinguished in the file wrapper and the summary of the invention was a system that could only have pre-programmed information. It couldn't change on the fly and it couldn't do two informational schemes. The thing we're focusing on here is change on the fly. Change on the fly means if there's a different informational scheme in other words it's not the one that's pre-programmed it can be received and stored and then it can be changed and that's possible as a result of this invention that's what this is claiming. The court below interprets it to say well it's going to be I think your point has been that if LG wanted to it can flick a switch it can change its wiring and its device to take full advantage of your invention if it wants to. No, it actually does it it actually does it when it receives and stores it if it were to find RT5 or change it would do that. The point is the requirement is not that it actually make the change it requires that it receive and store and then it does the comparison and it does all those steps it receives and stores. The point they're trying to make is they're trying to graft into here saying well it also has to remove it has to actually take out what's there and put in the new thing as the court as Judge Moore is saying you've got to take that configuration information for a new informational scheme. Well first of all the configuration information is not the informational scheme it's very clear it's at least a category and some levels it's describing an informational scheme. If it happens to be describing one that's already pre-wired they don't need to use it. If it describes something that's partially different only the part that's partially different will be used and therefore the system can adjust on the fly. You don't have to take it back and rewire it. Counsel you are way over your time we will restore a few minutes of rebuttal time but I think we ought to let Mr. Harris have a turn. Thank you Your Honor. Thank you Your Honors. Good morning Your Honor. Counsel may it please the court in arriving at the actual construction that stays true to the claim language and aligns with the patent's description of the invention Weiland is asking this court to ignore five huge issues five quantum leaps    they want to have the court ignore the disavowal and in this particular case Your Honor Judge Harris is asking the court to ignore the disavowal because you raised the issue as to did the court rely on purpose to condition the claim construction in reality the definition that Mr. Scipior referred to was posed in 1996 when they filed the application that application was co-pending with the parent application and during the prosecution in 1998 two years later disavowal after disavowal six separate representations in the O30 application as well as information in the spec of the O91 application specifically said this is to be used instead of this has nothing to do this is the exact antithesis of where something is pre-programmed that's in the prior art the court did not merely look at the purpose and the intent and the mere summary of the invention as to what was attempting to be accomplished there that's item one the avowal is clear it's distinct it's repeated where is the disavowal show me what page and what precise language you think is a clear and unmistakable disavowal that pertains to the words information scheme okay if you look right off the bat at appendix page 3373 I believe it's column two there's a reference in there in the 402 patent itself which page are you referring to yes it's 3373 I believe it's column two of the patent yes okay if you look under summary of the invention it says the prior art blocking systems include devices which must be constructed or initially programmed with advanced knowledge of the coding scheme advanced knowledge I'm sorry this is at lines 12 through 23 and this is the 402 patent not the parent application it mentions that the prior art blocking systems include devices which must be the advanced knowledge must include what codes are used in the coding scheme and embedded in the incoming video signal and should also include the meanings of those codes then in the same patent in column 12 the inventor very I realize that that's just a description of the prior art of the prior art that's correct that in and of itself is certainly not a disclaimer agreed your honor but when you get to paragraph column 12 rather the inventor says if all programming were described where are you oh I'm sorry line 55 57 through 61 programming again 66 through column 13 line 6 look what he goes on to say if all programming were described everywhere according to the universal informational scheme which your honor is exactly what we have right now in the U.S. that's how it's done which never changed which is what we have in the U.S. then apparatus 20 could be pre-programmed to recognize all of the types of information about video signal 24 in that universal scheme he goes on to say line 67 consequently the invention provides a method and apparatus to remotely configure apparatus to accommodate new schemes for selecting and transmitting information about video signal 24 that may be introduced to augment or replace existing schemes that makes it unnecessary to physically alter apparatus 20 if new informational scheme is adopted that's for the purpose of the invention that's true that's why I said what I said when your adversary but at the same time that this is being prosecuted but how is that how is saying consequently the invention provides a method and apparatus to remotely change and accommodate new schemes the same thing is saying therefore my extension doesn't include to anything that has any pre-programmed information that it uses saying something includes one thing is not the same thing as saying it excludes something else understood your honor and that's why your an unmistakable disclaimer is something that we've taken very seriously here at the court I understand your honor but at the same time that the same terms are being prosecuted in the O30 application if the court refers to appendix pages 780 794 795 796 798 and 804 I've got six different occurrences where the applicant states pick your best one how about a couple I'll pick a couple good ones each of the same patent now 402 this is not the 402 this is the co-pending parent application O30 application it never issued it was rejected which specification are we in now the ones you're going to give us to right now yeah we're at appendix 793 794 795 796 I'll just pick two now this is this is not an appendix this is office actions and responses this is not a specification these are this is the prosecution history this is in response to an office action alright what page are you on 793 you said 793 and 794 and I got some views for you judge we've got each of the cited references shows a video blocking system in which a blocking device is constructed with a priori knowledge of the rating system the rating scheme to be used the west system that's one of the priori references is apparently you've just jumped that's not the next sentence where are you now no I'm on the next page 794 I'm sorry you're taking one sentence from one page and then one sentence from another that's true because what he's doing at this point is distinguishing each of the priori references he starts with a general comment that all of them require initial existing knowledge of the rating scheme then at 794 he goes to the west system at 794 and says west system is apparently programmed with advanced knowledge of all ratings I can't find what you're reading on 794 well it doesn't say so it doesn't say the west system it does it's apparently programmed with advanced knowledge of all ratings right the west system is apparently and these are quotes programmed with advanced knowledge of all rating schemes which might be applied to programming in the received signal on the same page they go to the ELAM priori apparatus which is and says it is clear that the ELAM apparatus is constructed with advanced knowledge of the rating scheme to be applied unquote at the same page at 795 the next page those LG devices are practicing the priori that's correct that's precisely and there are two or three additional locations at page 798 for example in distinguishing the error and again I don't have a line number but it's at 798 the information transmitted and received by the sighted references merely specifies the rating being applied to video programs according to a predetermined scheme known a priori to both the transmitter and the receiver in all of the sighted references but all that's all that's true that the priori teaches that the devices are already hardwired right? that's correct so what would happen if the district court had looked at this a little differently and said well this informational scheme information described in the informational scheme instead of saying that it can't include information that the device already knows it has to include something the device doesn't know the purpose of the invention was to say here that there would be a way to allow the hardwired device to make adjustments if you will and it's not going to make adjustments of what it already knows it's going to make adjustments to something new or different that's correct your honor and by the way your honor just for everyone's information the RRT1 signal would you object to a definition that said instead of saying the way he did that the informational scheme has to exclude what's already known with that analysis and here's why well his information system he says could transmit something why land is suggesting that RRT1 that is broadcast in some locations in the U.S. but not all is somehow received by the machine and it's that purported same exact information that's used that's not the case RRT1 is incapable of configuring of VCHIP analysis because the CEA 766 data is missing from RRT1 in other words what's pre-programmed in the LG units has what is in RRT1 and a whole bunch more so it's not receiving the exact signal are you saying that what you are not using anything except pre-programmed information for the FCC argument you know they have at a point in their brief in the gray brief at 23 and 24 or 25 thereabouts they make an argument and they say that if this what you are saying is true then LG's accused products would not be able to respond to changes in the content advisory rating system as required by FCC regulation FCC regulations require that if and when another signal is ever broadcast that newer sets have the capability or at least consider the opportunity to get another new transmission but that's only one of two required transmissions your honor so in essence as things stand right now what LG sets have are pre-programmed hardwired RRT1 plus CEA 766 that's not what RRT1 broadcasts it's hardwired it's not even receiving the first transmitted signal on the TV channel there's the other signal that could possibly ever be considered has never been broadcasted in this country it hasn't been and accordingly the method which is very very important and your honor mentioned hey in looking at the importance of elements A through D you have to receive from a transmission a television transmission a first configuration information that defines an information scheme you've got to receive a second one your honor we're not even receiving and using the first one in this case all we're using is the hardwired prior RRT version that we've got and that's the second point of the leaps that Wylan is asking you to make it ignores the fact also that at one point we see in the briefing that A through D now and the court has brought up the fact that the word said appears over and over and over again with regard to those first and second information schemes in elements E through I and yet we're told in the briefing that elements A through D may not even be necessary now you may not even have to receive a transmission to enable this configuring on the fly that doesn't make sense you can't use E through I that refers over and over and over again to these informational schemes if you're not receiving them storing them and using them for the purpose for which they're intended which is to configure the receiver LG's receivers do not get configured by any signals received on any television band at all it's all pre-wired so whether the court looks at claim construction as an issue did the court appropriately use the disclaimers of the sister application the parent application rather or are elements even after even after construction are there elements missing let's assume the rating system changes let's assume there's a quadruple X rating that's added for really dirty stuff for movies and so a movie is coming through on a you know on a cable channel late at night and it's carrying triple X rating but let's assume your machines are only wired for double X what happens well it depends if it's coming in on a separate channel if it's coming in on a separate signal it's got to accompany the programming it can't be something that gets hardwired in I'm just dealing with a situation where a new rating new rating system if a new rating system comes in then what we've found is we've got the first informational scheme we're still missing the second broadcast informational scheme let's assume they send two two completely separate informational schemes let's assume for Canada I mean they're trying to broadcast for up in Buffalo and so they say well guess what we've got a new triple X rating in the United States and a quadruple X or quadruple X rating in both countries and we want to transmit that to all our friends over in Ottawa and everybody down in Buffalo and so this movie comes through and it's got a quad X rating on it and your machine only knows about 3X I said I do not want my children watching any 3X movies so I've taken your device and I've programmed to kick all 3X out and a 4X movie shows up what happens? Your Honor what would happen is our machine the LG machine has the pre-programmed chip it's got all that stuff that's hardwired it would be able to receive should it ever be generated and to date it hasn't it would be able to receive one channel carrying frequency that's your one channel two channel argument that you say if you had to go back or you're going to win on the one channel but it could only receive one the sets are not configured they're not arranged to be able to receive the two that are recorded but it is configured to receive the one so what you're telling me is that if our situation works assuming that I forgot about the two signals on the one if they transmit something that's new it's going to get through and work and it's going to be received stored and my viewer can say oh wow I want to get rid of quad X I'll get rid of quad X and it'll cancel it right? well in essence there would be a blocking function but it would only be through the utilization of one signal one frequency the LG machine only has the ability should it ever be generated to receive one I'm trying to get a claim construction not at whether or not there's an absence of an infringement because there's only one set of information being passed instead of two I'm still pushing with trying to have you help both your sides help us to decide whether or not this claim construction in the face of a clear definition in the statute I mean in the spec because the inventor said by this I mean this and our rules you know we play by the rules we gotta have something pretty big to overcome that your honor I don't believe that the claim construction that the lower court reached stated that if there's a pre-wired pre-programmed section on the set it forecloses it precludes ever being able to receive the two separate informational configuration schemes that are going to come in ever again there's no suggestion at all it's simply because it has a hardwired portion it could never ever in the future be directed but to do it it's gotta be able to receive two the two elements of A and C Thank you counsel your time has expired do you have one closing sentence that you wanted to say yes your honor there was a quick mention that purportedly Judge Kaplan found infringement if the claim construction on informational scheme was somehow changed that is not there was an inadvertent mention of the fact that as the court no judge made an inadvertent mention or somebody else well the judge didn't realize that there were another seven motions for summary judgment pending where other terms of the claim so what he was saying was on this particular limitation if that's all there was in the whole patent and you don't disagree with that well we disagree that there would be a possibility for infringement I mean there's on that specific limitation on that interpretation yeah it wouldn't necessarily mean infringement that's all we were getting there were some other representations made but I believe the briefing and the I believe the court is well advised there was some confusion about whether or not you got rid of the counterclaims too I mean just as a little lecture to you we took that very nice term against Trex you know that case we took this very very seriously in fact as I told my colleagues one day Judge Merrill was presiding and somebody came in and said well you're right we didn't get rid of the counterclaims and for the record your honor we agree with Mr. Scipior all the other claims including those counterclaims that weren't specifically mentioned we understood those to be dismissed as moot until we go back and face-to-face well if the case goes back refile you know don't let me learn later on that you told the judge you didn't have to refile because they would have been disqualified   their  so we we we we we we we we we rebut it we we we we we we we we we we But let us get over this disclaimer, this disclaimer because, you know, we all know how to use words, we can say we find a disclaimer, you know, here, there, and other place. So your adversary is pointed to six, seven places of history where it is saying, you know, they saw what he said. Yeah, we all do, why isn't that important? We embrace them all, just as we do with sending of invention. In every instance that the inventer was distinguishing the prior arc, which was limited to a system that had to have the information prefigured in the actual device, which meant that if the system changed, if the signal changed... For some people it means, I'm not trying to write a claim that covers a system where everything is baked in. No, but it's just the opposite. I mean, it's very clear that the inventor, the portion he read, just as an example, the portion he read, he read and he said, consequently, invention provides a method, this is column 12, it's important here on line 67 or so, consequently, invention provides a method, and APRES to remotely configure APRES-20 to accommodate new schemes for selecting and transmitting information. I'm talking about what's in the file history. Okay. I understand his main disclaimer argument to come out of the file history. Yes, and it's the same as the patent itself. The patentee was distinguishing prior arc. The prior arc was limited to situations where... When you distinguish prior arc, you're saying, please get it clear, I'm not trying to claim prior arc. I have a system that's not limited to only having information prefigured. It can be prefigured, it can be completely new, or it can be partially changed. That's the part I was going to read. No, no, no. You can't say they have preconfigured, but my claim is not like them because mine covers preconfigured, some new, some pre... That would fall within the claim still. If your claim is broad enough to cover only preprogrammed information, then you fall squarely within the prior arc. No, the question is what you can do with it. The element here... It's a method claim. It's not what you can do, is it? It's what do you do? What you do with it... It's a method claim, not an apparatus claim. Correct, and A through D of the claim sets forth what happens is you receive, you store, and then as they do in this case, they look to see whether or not it's different. If it is different, as he's just acknowledged, they can change. They don't have to rely on the preprogrammed information. But there's no evidence that they ever change. Only if they were to change and use the new information are you going to have them using something that isn't preprogrammed, and there's no evidence of record that that's being done. That's nowhere in the claims, Your Honor. What you just said is nowhere in the claims. If you look at A through D, all it requires is receiving and storing and looking at user preferences. That's all that's required, and that's exactly what they do. And it says blocking using said category, said information scheme. If it's required to do so, if it's called upon to do so, if the information changes... Blocking is blocking. It's not if it's called upon to block. I mean, that's the point of the claim. If you don't block, you don't have infringement. No, the claim H and I says block or not block. Those are both actions. You look at limitation H, I. In certain circumstances, if the information is such that the user preferences say block, it blocks. If the user preferences say don't block, it passes through. Those are both methods that are part of the step. That's what actually happens. In the LG system, it's not the prior art. They actually can get a new system, as he's described. He's arguing about the two informational schemes. We'll fight about that later, but if an informational scheme comes through that's different, they can look at it, they receive it, and they store it, and they can change what they have, and they can block based on a new informational scheme. That's exactly what this invention is about. You're saying they can do it. They can do it. This is a method claim. There's no evidence of record that it is being done, and so therefore you have an established infringement. Well, the method is only received. Again, the method is received. Look at the language of A through D. It's received, stored, and then evaluate. At that point, you have the user preferences selected, and then there's analysis done at that point. Well, you know, that really then turns it all on what the meaning of stored is, which we haven't spent much time. Because if you said stored from his perspective, what stored means, your LGs for a second, stored means put someplace to be used later. That's the purpose of storing it. And you say storing simply means it came in and sat someplace. No, no. They actually look at the information and they see whether it's new. They look at the information. It's RRT1. It's the same. We don't need to do anything with it. There's actually, in their device, they actually do this invention. If it just came in and they didn't do anything with it, then that would be a good argument. But they actually look at it. And if it was RRT, as they say, depending on what it is, they'll make an adjustment. Well, but they say he thinks storing means lodging it there in order to use it in the future. And you wouldn't use it in the future if it's already there in hardware. Well, we have an RRT in store, but the notion here is for the purposes of this claim in this language, the issue is whether or not when it comes in, it actually happens. What they're saying is, oh, it's within the prior RRT. All that ever happens is that hardware information is used. That's not true. The method says, is it received and stored? And when it's received and stored, at that point in time, an evaluation is done in the software, and they look to see whether it's different than what's there. Or, for example, if it's RRT5, they would then do exactly what's going on here. But the method doesn't require them to actually do something specifically in terms of swapping out. It says, look and evaluate, receive and store. I think we have your argument. You want to conclude with a final thought, or do you think we've got it down? I think the only thing I'd add is, I mean, in the specification, there are a number of instances. The key thing here is the disclaimer. In the part that you read on page 12, it actually talks about if it was limited to only things that didn't have prior information, augmentation wouldn't be an issue, right? You couldn't be augmenting something if you were going to rely on something that was already there, according to claims construction. And if you look at column 13, it specifically says... Okay, counsel, I think you're going too far at this point. You've exhausted your time, plus the four minutes, plus the two I gave you for free, so we've got to call it quits. Okay, thank you, Your Honor. Thank you, counsel. We thank both counsel for their arguments. It's been very helpful to the court. Thank you. Okay, last case, which was really our second case, is 2012-5072.